<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PNY TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG SEMICONDUCTOR EUROPE GmbH, <br><br> Defendants. | Civil Action No. 10-4587 (SRC) (MAS) <br><br><br> **OPINION** |
| PNY TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendant. | Civil Action No. 10-6803 (SRC) (MAS) |

**<u>CHESLER</u>, U.S.D.J.**

This matter comes before the Court on four motions in these two cases: 1) in Civil Action No. 10-4587, the motion to dismiss by Defendant Samsung Semiconductor Europe GmbH ("SSEG"); 2) in Civil Action No. 10-4587, the motion to dismiss by Defendant Samsung Electronics Co., Ltd. ("SECL"); 3) in Civil Action No. 10-6803, the motion to dismiss by Defendant Samsung Electronics America, Inc. ("SEAI"); and 4) in Civil Action No. 10-6803, the motion to remand by Plaintiff PNY Technologies, Inc. ("PNY"). This Court heard oral argument on these motions on February 15, 2011. For the reasons stated below, the three motions to

dismiss will be granted to the extent that these cases shall be stayed pending arbitration, and the motion to remand will be denied.

## BACKGROUND

These two cases arise from a dispute between two electronics manufacturers, Samsung and PNY Technologies, Inc. ("PNY.") SSEG, SECL, and SEAI are all Samsung companies, and for convenience in this Opinion, unless the distinction between these entities is material, they will be generally referred to as "Samsung." The complaints in both cases allege that a nondisclosure agreement was executed by PNY and SSEG in 2008. On September 8, 2010, PNY filed a complaint (the "FC Complaint") against SSEG and SECL in this Court, Civil Action No. 10-4587, complaining generally of disclosure of confidential information in breach of the agreement. On October 19, 2010, PNY filed a complaint (the "SC Complaint") against SEAI in the Superior Court of New Jersey, making generally similar allegations. On December 22, 2010, SEAI removed the pending state court action to this Court, and it became Civil Action No. 10-6803.

The Samsung entities have brought three motions to dismiss in the two cases, generally contending that the complaints must be dismissed because PNY is obligated to arbitrate these disputes. PNY has moved to remand the removed case.

## ANALYSIS

**I.  Relevant legal standard**

  A.  Motions for summary judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(a) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the

2

moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer,

Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## II.     The motions to dismiss

Although Defendants have framed their motions as motions to dismiss, this Court finds them to be motions to compel arbitration. "A district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment." Kaneff v. Del. Title Loans, Inc., 587 F.3d 616, 620 (3d Cir. 2009). These motions will be decided under the summary judgment standard.

As to the motion to dismiss in the removed case, PNY opposes it as, *inter alia*, an unwarranted motion for reconsideration of a motion to dismiss which was already made in state court and denied. As Samsung contends, however:

> Federal courts are courts of limited jurisdiction, and when there is a question as to our authority to hear a dispute, it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition on the merits.

Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010) (quotation omitted). Because Defendants' motions question this Court's authority to hear these disputes, it is appropriate for this Court to consider this matter and to decide the motions before it.[1]

"Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 523 (3d Cir. 2009).

The parties do not dispute the relevant history of executed agreements: 1) on May 6 and July 17, 2008, PNY and SSEG executed the "PNY Mutual Confidentiality and Non-Disclosure Agreement" ("NDA"); 2) on July 7, 2008, the parties executed the "Memorandum of Understanding Regarding Strategic Supply Cooperation" ("MOU"); 3) on February 6, 2009, the parties executed the "Business Agreement Regarding Strategic Supply Cooperation" ("2009 Agreement"); and 4) on or about January 21, 2010, the parties executed the "Volume Agreement for Memory Products" ("2010 Agreement.")  The NDA contains no express arbitration provision, while the three other agreements contain express arbitration provisions.

In short, Samsung moves to compel arbitration on the basis of the arbitration provisions in the three agreements that contain them.  PNY, in short, opposes the motions on the ground that it has filed suit for breach only of the NDA, which contains no arbitration provision.  Thus, PNY

---

[1] The Court notes that the state court action was removed based on federal question jurisdiction, pursuant to 9 U.S.C. § 205, as a case relating to the "Convention on the Recognition and Enforcement of Foreign Arbitral Awards." Thus, in order to determine whether "arising under" jurisdiction exists, this Court must necessarily determine whether the parties are covered by the arbitration provisions. In making a jurisdictional decision, this Court cannot be bound by the state court's prior denial without prejudice of a motion to dismiss.

contends, it did not agree to arbitrate this dispute.  This Court finds PNY's position unpersuasive, for the following reasons.

The FC Complaint, filed in Civil Action No. 10-4587, in summary, alleges that PNY disclosed to Samsung confidential information which Samsung has misappropriated, in breach of the NDA.  The FC Complaint alleges specific disclosures to Samsung during the period from March 3, 2009 through April 21, 2010.  The SC Complaint, filed in state court, and removed to this Court, makes similar general allegations but does not allege specific disclosures on specific dates.  PNY does not contend, however, that the removed case concerns conduct that differs from that alleged in Civil Action No. 10-4587.

PNY seeks, by artful pleading, to prevent this Court from considering any agreement other than the NDA.  As Samsung contends, however, the claims PNY makes against it cannot be divorced from the subsequent agreements: the MOU, the 2009 Agreement, and the 2010 Agreement.  The primary problem for PNY is that, as alleged in the FC Complaint, the disclosures made in 2009 and 2010 appear to come within the scope of the confidentiality provisions contained in the MOU and in the 2009 and 2010 Agreements.  PNY has agreed to arbitrate disputes arising from those agreements.  It appears that PNY wishes to argue that the disclosures it complains of do not come within the scope of those agreements, and yet PNY has not given this Court any basis to arrive at this conclusion – except for the fact that its complaints do not mention any agreements subsequent to the NDA.  As already stated, there is no dispute that PNY entered into the subsequent agreements.

In support of its position, Samsung cites the nonprecedential decision in <u>In re NBR Antitrust Litig.</u>, 207 Fed. Appx. 166, 171 (3d Cir. 2006), in which the Third Circuit held: "Even

when a claim arises under a contract which contains no arbitration clause, that claim still may be arbitrated when the allegations underlying it 'touch matters' covered by an arbitration clause." While NBR may be nonprecedential, the Third Circuit has held the same in precedential cases, such as Brayman Constr. Corp. V. Home Ins. Co., 319 F.3d 622, 626 (3d Cir. 2003).

In Brayman, an insurance policy contained no arbitration provision, but a subsequent separate agreement between the insurer and the insured contained one. Id. at 623. The district court denied a motion to compel arbitration, and the Third Circuit reversed. Id. at 624. The Third Circuit examined the arbitration provision and determined that it was "broad in scope," and that the dispute between the parties came within its scope. Id. at 625. Moreover, the Third Circuit held that any ambiguities or uncertainties surrounding the question of whether a particular dispute comes within the scope of an arbitration clause should be resolved in favor of arbitration. Id.

The insured in Brayman argued that its claims arose under the insurance policy, rather than under the subsequent agreement, and that, therefore, its claims were not within the scope of the arbitration provision. Id. The Third Circuit rejected this argument, holding: "If the allegations underlying the claims touch matters covered by an arbitration clause in a contract, then those claims must be arbitrated, whatever the legal labels attached to them." Id. at 626 (quotation omitted). Because the Third Circuit determined that the allegations underlying the claims touched matters covered by the arbitration clause in the later agreement, it found that the dispute was arbitrable and that arbitration was mandatory. Id.

Brayman controls the outcome of the instant matter. Following Brayman, this Court first inquires as to whether the allegations underlying the claims touch matters covered by an

arbitration clause in a contract. The allegations underlying Plaintiff's claims in both cases concern breach of duties to keep information confidential in 2009 and 2010. The MOU provides for confidentiality obligations regarding information exchanged during the period from July 7, 2008 through March 31, 2009, and the definition of confidential information is broad in scope: "'Confidential Information' means *any* non-public information, data, and other materials regarding the products, services or business of a party . . ." (Kerner Dec. Ex. B at § 4) (emphasis added). The arbitration provision is similarly broad in scope: "If a dispute, controversy or difference is not amicably settled, it shall be finally resolved in accordance with the Rules of Arbitration of the International Chamber of Commerce."[2] (Kerner Dec. Ex. B at § 6(f).) Plaintiff's allegations regarding the disclosure of confidential information exchanged in March of 2009 touch matters covered by the MOU's arbitration clause.

      The 2009 Agreement also provides for confidentiality obligations regarding information exchanged during the period from January 1, 2009 through December 31, 2009, and uses the same definition of confidential information and the same arbitration provision. (Kerner Dec. Ex. C.) Plaintiff's allegations regarding the disclosure of confidential information exchanged in 2009 touch matters covered by the 2009 Agreement's arbitration clause.

      The 2010 Agreement also provides for confidentiality obligations regarding information exchanged during the period from January 1, 2010 through December 31, 2010, but does so by incorporating by reference the NDA, which contains the same definition of confidential information as the other agreements. (Kerner Dec. Ex. D.) The 2010 Agreement contains the

---

[2] The three agreements which contain arbitration provisions contain this identical sentence.

same arbitration provision as the 2009 Agreement. (Id.) Plaintiff's allegations regarding the disclosure of confidential information exchanged in 2010 touch matters covered by the 2010 Agreement's arbitration clause.

This Court finds that Plaintiff's allegations regarding the disclosure of confidential information touch matters covered by an arbitration clause in three agreements. Under Brayman, both of Plaintiff's cases before this Court are arbitrable and arbitration is mandatory.

Furthermore, the Supreme Court has established that:

> where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

AT&T Techs. v. Communs. Workers of Am., 475 U.S. 643, 650 (1986) (quotation omitted). Plaintiff here has failed to rebut the presumption of arbitrability: it has not persuaded this Court that it may be said with positive assurance that none of the arbitration provisions in the three agreements are susceptible of an interpretation that covers the asserted dispute. Rather, Plaintiff has offered nothing that even raises a doubt or question as to whether the conduct complained of comes within the scope of the arbitration provisions in the three agreements. Plaintiff's disputes are arbitrable and an order to arbitrate may not be denied.

Plaintiff's opposition briefs relegate Brayman to a footnote, relying primarily on the Third Circuit's decision in Battaglia v. McKendry, 233 F.3d 720, 728 (3d Cir. 2000). Like Brayman, Battaglia involved two agreements, one containing and one lacking an arbitration provision. Id. At issue was the question of whether the arbitration clause in one agreement reached disputes which arose under the other agreement – a question which, in the abstract, seems to be the same

9

as the question presently before this Court.  There is, however, a crucial distinction, since the issue on appeal in Battaglia turned on the question of whether the agreements were interdependent documents:

> [T]he District Court found that all disputes between the parties -- including those relating to the Consulting Agreement -- were subject to the Arbitration Clause.  The Court's decision was based on the breadth of the Arbitration Clause and the Court's conclusion, based on the language of the Agreements, that the parties intended for the Settlement and Consulting Agreements to be interdependent and interrelated documents.

Id.  The Third Circuit agreed with the district court that the question at issue was whether the two agreements should be construed as a single integrated agreement, but found that material factual disputes precluded judgment on that question.  Id.  In the instant case, in contrast, no one has argued that two or more of the agreements should be construed as a single integrated agreement.  Battaglia is inapposite.  It does not, as Plaintiff implies, stand for the proposition that, as a general rule, factual disputes over the integration of multiple agreements, some of which require arbitration and others of which do not, preclude the grant of a motion to compel arbitration.

Brayman, on the other hand, is on point.  Even if Plaintiff had raised a substantial question about whether the allegations underlying the claims touch matters covered by an arbitration clause in another contract – which it has not done – the presumption in favor of arbitrability would require that this Court grant the motion to compel arbitration.

This Court finds further support for this conclusion in looking at the integration clauses in the agreements.  The MOU states: "This MoU constitutes the entire understanding and agreement of the parties with respect to the subject matter hereof."  (Kerner Dec. Ex. B at § 6(j).)  A parallel provision appears in the 2009 Agreement.  (Kerner Dec. Ex. C at § 6(j).)  The 2010 Agreement


contains no integration clause. The integration clauses in the MOU and 2009 Agreement show that, for the time period covered by these agreements, July 7, 2008 through December 31, 2009, the NDA was superceded by these agreements. This precludes PNY from persuading that the NDA was the operative agreement during that period. For the period from July 7, 2008 through December 31, 2009, the parties agreed that their entire agreement regarding, *inter alia*, the disclosure of confidential information, was embodied in two documents, both of which contained arbitration provisions.

This Court is authorized by the Federal Arbitration Act to compel arbitration in these two cases:

> Pursuant to 9 U.S.C. §§ 3-4, a federal court is authorized to compel arbitration if a party to an arbitration agreement institutes an action that involves an arbitrable issue and one party to the agreement has failed to enter arbitration.

Harris v. Green Tree Fin. Corp., 183 F.3d 173, 178-179 (3d Cir. 1999). These requirements have been met. The motions to compel arbitration will be granted, and the cases will be stayed pending completion of arbitration.

PNY contends that, because only SSEG is a signatory to the agreements at issue, SEAI and SECL cannot compel it to arbitrate the disputes against them. PNY alleges that SSEG is a wholly owned subsidiary of SECL.[3] (FC Compl. ¶ 4.) In opposition, Samsung cites E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 201 (3d Cir. 2001), as authority for the proposition that, under an equitable estoppel theory, PNY may be obliged to arbitrate claims against non-signatory entities related to the signatory. In DuPont, the

---

[3] The complaint filed in state court identifies SECL, SSEG, and SEAI as "affiliates." (SC Compl. ¶ 1.)

Third Circuit summarized the relevant case law as follows:

> With reference to the second theory of equitable estoppel, appellants rely on a series of cases in which signatories were held to arbitrate related claims against parent companies who were not signatories to the arbitration clause. In each of these cases, a signatory was bound to arbitrate claims brought by a non-signatory because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations.

Id. The Third Circuit then quoted approvingly this language in a decision from the Second Circuit:

> As these cases indicate, the circuits have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.

DuPont, 269 F.3d at 202 (quoting Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995.))[4]  Such is the case here.  PNY and SSEG are the signatories to the agreements.  In moving to compel arbitration, non-signatories SECL and SEAI ask this Court to estop a signatory from avoiding arbitration with a non-signatory, and the issues that the non-signatories seek to resolve in arbitration are intertwined with agreements that the signatory has made.  PNY does not argue – nor could it reasonably – that its disputes with SECL and SEAI are not intertwined with the agreements between PNY and SSEG.

The SC Complaint alleges that SEAI "intentionally misappropriated PNY's confidential information and trade secrets by inducing Samsung's affiliates – in breach of its Non-Disclosure

---

[4] In Thomson, the Second Circuit, after reviewing the cases as quoted above, also stated: "In the line of cases discussed above, the courts held that the parties were estopped from avoiding arbitration because they had entered into written arbitration agreements, albeit with the affiliates of those parties asserting the arbitration and not the parties themselves." 64 F.3d at 779.  This is on all fours with the present case.

Agreement with PNY – to disclose PNY's proprietary and confidential information to Samsung." (SC Compl. ¶ 1.) The gist of the state court complaint is that SEAI misappropriated PNY's confidential information "through its affiliates" and that SEAI "intentionally encouraged its affiliate to breach the NDA by misappropriating PNY's confidential, proprietary and trade secret information." (SC Compl. ¶¶ 14, 23.)

The allegations in the SC Complaint easily fit the pattern of cases identified by the Third Circuit in DuPont: 1) PNY has alleged a close relationship between the entities involved ("affiliates"); 2) the wrongs of SEAI alleged by PNY are directly related to the obligations of SSEG under the contract; and 3) the claims against SEAI are intertwined with the underlying contractual obligations of SSEG. Under DuPont, it is equitable to estop PNY from avoiding arbitration with SEAI, given that the issues that SEAI seeks to resolve in arbitration are intertwined with the agreements that PNY has signed.

As for the FC Complaint, although it initially identifies SSEG as a wholly owned subsidiary of SECL, after alleging that the NDA was signed by SSEG, the distinction between the Samsung entities vanishes, and all subsequent factual allegations refer only to "Samsung," the FC Complaint's term for SSEG and SECL collectively. Turning to the claims, PNY brings Counts One, Two, Three, and Five against SSEG only. PNY brings the Fourth Count, for tortious interference, against both SSEG and SECL, but does not distinguish the two entities in the claim, referring only to "Samsung." PNY brings the Sixth Count, for misappropriation of trade secrets, against SECL only, contending that SSEG disclosed confidential information, protected by the NDA, to SECL, which has misused the information. PNY brings the Seventh Count, for unfair competition, against both SSEG and SECL, but does not distinguish the two

entities in the claim, referring only to "Samsung."

On the whole, then, the FC Complaint substantially blurs the identities of SECL and SSEG. It is only in asserting the Sixth Count that PNY differentiates the wrongful conduct of SSEG from the wrongful conduct of SECL.

Considering the FC Complaint in light of DuPont, this case fits the equitable estoppel case pattern identified by the Third Circuit. First, PNY has alleged a close relationship between the entities involved: either they are parent and subsidiary, or they are undifferentiated and treated as a single entity. Second, the wrongs attributed to SECL in Count Six are directly related to the obligations of SSEG under the contract, as are all the other wrongs alleged against the undifferentiated "Samsung." Third, the claims against SECL are intertwined with the underlying contractual obligations of SSEG. Under DuPont, it is equitable to estop PNY from avoiding arbitration with SECL, given that the issues that SECL seeks to resolve in arbitration are intertwined with the agreements that PNY has signed.

In short, PNY asks this Court to differentiate the Samsung affiliate entities when it is beneficial to its legal strategy and to pierce the corporate structure when differentiating the entities is not beneficial to it. PNY cannot have it both ways. This is not equitable and this Court will not allow it.

The argument for equitable estoppel here is quite straightforward: PNY is equitably estopped from asserting that the scope of the NDA, an agreement between PNY and SSEG, extends far enough to touch SSEG's corporate relatives SECL and SEAI, but that those corporate relatives may not compel PNY to arbitrate disputes within the scope of its related agreements with SSEG. The entities, agreements, and obligations in these two cases are so interconnected

and intertwined that any other decision would promote the chaos and inefficiency of piecemeal litigation. It is both fair and in the interests of justice to require PNY to resolve all of these interconnected disputes in a single arbitration.

Having found that the SC Complaint relates to an arbitration agreement which falls under the "Convention on the Recognition and Enforcement of Foreign Arbitral Awards," this Court concludes that, pursuant to 9 U.S.C. § 205, removal was proper. The motion to remand will be denied.

## **CONCLUSIONS**

For the reasons stated above, this Court concludes that the disputes raised by Plaintiff in Civil Action No. 10-4587 and in Civil Action No. 10-6803 are arbitrable, and are subject to mandatory arbitration. Defendants' three motions to dismiss, construed as motions to compel arbitration, will be granted, and these cases shall be stayed pending completion of arbitration. The motion to remand is denied.

    s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.

Dated: March 14, 2011