UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------ :
                                                 :
PNY TECHNOLOGIES, INC.,                          :
                                                 :
                        Plaintiff,               :
                                                 :
                                                 :        Civil Action No. 10-4587 (SRC) (MAS)
v.                                               :
                                                 :
SAMSUNG ELECTRONICS CO., LTD.                    :
and SAMSUNG SEMICONDUCTOR                        :        **OPINION & ORDER**
EUROPE GmbH,                                     :
                                                 :
                        Defendants.              :
------------------------------------------------ :
------------------------------------------------ :
                                                 :
PNY TECHNOLOGIES, INC.,                          :
                                                 :
                        Plaintiff,               :
                                                 :
                                                 :        Civil Action No. 10-6803 (SRC) (MAS)
v.                                               :
                                                 :
SAMSUNG ELECTRONICS                              :
AMERICA, INC.,                                   :
                                                 :
                        Defendant.               :
------------------------------------------------ :

**CHESLER, U.S.D.J.**

        This matter comes before the Court on the motions for reconsideration of this Court's

Opinions and Orders entered March 14, 2011 by Plaintiff PNY Technologies, Inc. ("PNY").  For

the reasons stated below, the motions for reconsideration will be denied.

        "A court may grant a motion for reconsideration if the moving party shows one of the

following: (1) an intervening change in the controlling law; (2) the availability of new evidence

that was not available when the court issued its order; or (3) the need to correct a clear error of

law or fact or to prevent manifest injustice."  See Banda v. Burlington County, 263 Fed. Appx.

182, 183 (3d Cir. 2008) (citing Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)); L. Civ. R. 7.1(i).

In the Opinion and Order of March 14, 2011, in brief, this Court considered three motions to dismiss, construed them as motions to compel arbitration, granted them, and stayed these two cases pending arbitration. PNY seeks reconsideration on several grounds.

PNY's primary argument is that, despite clear material factual disputes, this Court found that Defendants had met the requirements for a grant of summary judgment. PNY contends that this Court improperly resolved the following factual disputes:

> (1) the parties' intent when PNY specifically negotiated so that it would not be forced to arbitrate disputes about the misappropriation of its confidential information; (2) the intent of the parties regarding whether any terms of the NDA were ever supplanted; and (3) the intention of the parties with respect to whether PNY's claims against the non-signatories are properly bound to arbitration.

(PNY's Reconsid. Br. 3.) PNY's reconsideration brief is vague about exactly what evidence PNY offered that raised these factual disputes. The brief refers only to paragraphs 2-9 of the Stuto declaration and paragraph 9 of the Olear declaration.

As to paragraph 9 of the Olear Declaration, PNY's brief states that it "provided specific examples of communications with Defendant SSEG that confirmed the continued existence of the NDA." (PNY's Reconsid. Br. 3-4.) Even accepting, for the sake of discussion only, that these three questions of intent are material factual issues, paragraph 9 of the Olear Declaration does not offer evidence from which a reasonable finder of fact could arrive at a conclusion in PNY's favor.

The Olear Declaration states that Mr. Olear is Vice President of Supply Chain at PNY. (Olear Dec. ¶ 1.) Paragraph 9 of the Olear Declaration states: "We have continued to exchange

confidential information with Samsung pursuant to the NDA from 2008 through 2010, including in the following instances: . . ." (Id. at ¶ 9.)  The declaration then identifies eleven communications.  (Id.)  Of the eleven communications, only three, relating to emails, refer to an exhibit of a copy of the email.  (Id.)  The three referenced emails appear in exhibits two through four of the declaration.  (Id. at Ex. 2-4.)  The exhibits contain copies of emails in which Samsung employee Tobias Lauerer, identified as "Account Manager" at SSEG on the emails, sent information to PNY employees, including Mr. Olear, and stated that the information is confidential and provided under the NDA.  (Id.)  The dates on the emails are April 30, 2009, July 8, 2009, and April 13, 2010.  (Id.)

How exactly these emails provide relevant and probative evidence as to the three alleged factual issues is a mystery.  The sole clue to PNY's argument as to the significance of these emails lies in a single sentence in a footnote, stating that the emails "confirmed that the governance of the NDA never ceased based upon SSEG's own repeated confirmation in numerous communications that it was providing confidential information pursuant to the parties' 'NDA.'" (PNY's Reconsid. Br. 3 n.2.)

There are numerous problems here.  First, the Olear Declaration contains nothing to establish that Mr. Olear has any personal knowledge of the governance of the NDA, beyond the conclusory assertion of such knowledge.  (Olear Dec. ¶ 1.)  Second, the governance of a contract is a legal conclusion for the court, and Mr. Olear's beliefs – or Mr. Lauerer's beliefs – about such legal conclusions do not raise genuine disputes as to any facts which might underlie such a conclusion.

Third, setting aside for the moment the obstacles posed by the hearsay rule, this evidence

3

as to a Samsung account manager's beliefs about the NDA[1] – without more – does not constitute evidence from which a reasonable finder of fact could reach a conclusion about any relevant and material factual matter. There is absolutely nothing in the record, nor in PNY's brief, that indicates that Mr. Lauerer's beliefs are of any significance in the matter presently before this Court.

PNY asserts that there are factual disputes regarding the intentions of the parties to various contracts. It does not appear that Mr. Lauerer signed any of the relevant agreements. There is no reason to believe that Mr. Lauerer knows anything of significance as to the relevant agreements or the intentions of those responsible for entering into these agreements. The Supreme Court has established the "mere scintilla" threshold for the quantum of evidence required to create a genuine factual dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.") Neither these emails, nor Mr. Olear's reference to them, constitute even a scintilla of evidence as to the various intentions of the parties to the various agreements. Thus, even if the Court agreed with PNY that these questions of intention were material, neither the emails nor the Olear Declaration raise a material factual dispute about any of them, and the Court did not overlook relevant evidence.

PNY also points to paragraphs 2-4 of the Stuto declaration and states: "The Stuto Decl. explains how PNY *specifically negotiated* the NDA provision that did *not* require PNY to

---

[1] The Court also observes that there is nothing in the record to establish what Mr. Lauerer meant by the letters "NDA."

4

arbitrate this dispute." (PNY's Reconsid. Br. 12.) This raises no factual dispute.[2] No one asserts that the NDA contains an arbitration provision. PNY opposed Samsung's motions to dismiss on the ground that "there is no applicable arbitration clause governing this dispute." (PNY's Opp. Br. SSEA MTD 17.) PNY appeared to rely on the fact that the NDA states that the agreement "represents the entire understanding and agreement of the parties and supercedes all prior communications, agreements and understandings." (Kerner Dec. Ex. A at ¶ 7.)

PNY also points to paragraphs 2-9 of the Stuto declaration in support of the contention that the NDA was never superceded. (PNY's Reconsid. Br. 4-5.) Ms. Stuto states that neither the Business Agreement nor the Volume Agreement were "intended to supplant the NDA." (Stuto Dec. ¶ 8.) The Stuto declaration does not meet the requirements of Federal Rule of Civil Procedure 56(c)(4), which states:

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Ms. Stuto begins her declaration with the conclusory assertion that she has personal knowledge of the facts therein. (Stuto Dec. ¶ 1.) Ms. Stuto presents no basis for this conclusion: she does not state, for example, that she participated in any of the negotiations concerning the various agreements, or that she attended negotiation sessions. The Court notes that Ms. Stuto did not sign any of the relevant agreements. Thus – setting aside, for the moment, the parol evidence rule – when Ms. Stuto states, "Neither of these agreements was intended to supplant the NDA," she has given this Court no basis to find that she has personal knowledge of

---

[2] Moreover, the Stuto declaration actually says nothing about how PNY specifically negotiated the NDA. Had it contained statements of specific facts about those negotiations, based on the personal knowledge of Ms. Stuto, it might conceivably have been relevant.

those facts.  (Id. at ¶ 8.)  Then, in the following paragraph, Ms. Stuto quotes from the agreements and offers her conclusions based on these quotes.  It is the province of the Court to construe the language of contracts.  The Court concluded that these contracts (the MOU, the Volume Agreement, and the Business Agreement), based upon their plain language, governed the claims asserted in the complaints.

This Court finds nothing in the Stuto declaration from which to conclude that Ms. Stuto has personal knowledge of the facts stated therein, nor that she would be competent to testify as to any of the facts asserted.  The Court may reject an affidavit that fails to meet the personal knowledge requirement of Federal Rule of Civil Procedure 56(c)(4).  Aronson v. Peoples Natural Gas Co., 180 F.3d 558, 564 n.2 (3d Cir. 1999).  The Court rejected the Stuto declaration and found that it raised no factual disputes related to the motion before it.  The Court did not overlook relevant, admissible evidence.

The rest of PNY's reconsideration brief rests on the foundation of genuine disputes of material fact.  This Court having found that this foundation is absent, the remaining structure collapses of its own weight.

For these reasons,

**IT IS** on this 29th day of April, 2011

**ORDERED** that PNY's motions for reconsideration (Docket Entry No. 41 in Civil Action No. 10-4587, and Docket Entry No. 27 in Civil Action No. 10-6803) are **DENIED**.


        s/ Stanley R. Chesler
        Stanley R. Chesler, U.S.D.J.